## AMERICAN LINSEED CO. v. NORFOLK & NORTH AMERICAN STEAM SHIPPING CO., Limited.

District Court, S. D. New York. January 19, 1929.

Bigham, Englar & Jones, Henry N. Longley, and F. Herbert Prem, all of New York City, for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, and L. De Grove Potter, all of New York City, for respondent.

BONDY, District Judge. This suit was brought against the owner of the steamship Northwestern Miller to recover the difference in value between the quantity of linseed oil delivered to that ship at Hull, England, for transportation to New York, and the quantity actually delivered to libelant at New York.

The shipment was made under a contract which provided that oil shall be shipped in the steamer's deep water ballast tank. The contract also provided that the steamer will not accept responsibility for the quantity of oil shipped and delivered, but that all oil on board in the steamer's deep tank is to be delivered in satisfaction of the bill of lading; that the ship shall be free of responsibility for any leakage from the vessel's tank, or any deterioration to the oil which may arise after the tank has been cleansed and prepared to the satisfaction of the surveyor appointed by the shipper's underwriters; that the oil is only accepted by shipowners at the proprietors' risk and subject to the terms of the bill of lading, which shall be the shipowner's usual form; that the conditions of said bill of lading are part of the contract; and that the shipper is to supply tank barges and pumping machinery at the port of discharge.

The bill of lading, in a clause therein designated as "clause paramount," provided that it is mutually agreed that the bill of lading is subject to the Hague Rules of 1921 and that anything contained in the bill of lading that is inconsistent with the responsibilities and liabilities imposed thereby shall, so far as inconsistent, have no effect.

The ship never on any other voyage carried linseed oil in this deep tank, which originally was constructed for the carriage of water as ballast. An engineering company, employed by the respondent to repair all leaks in the tank, used white lead between clips and tank top in making the repairs, and hydrostatic tests made before the oil was reduced showed the tank was water-tight. The shipper's surveyor examined the tank and was satisfied with it.

The libel alleges and the answer admits that the defendant is engaged in the business of transporting merchandise for hire and that the Northwestern Miller was employed as a merchant vessel for the carriage of merchandise for hire between Hull, England, and New York. Four hundred and eighty tons of shale, which were carried in two of the vessel's holds for the owners, were sold upon the ship's arrival in Philadelphia, where all available cargo space was filled with grain to be transported to Europe after the delivery of the linseed oil in New York.

After the linseed oil was discharged, it was found that the deep tank leaked; that white lead had been used to make the tank water-tight; that the linseed oil had dissolved the white lead and loosened the joints and rivets and caused leakage into the double bottom tank, which experts testified accounted for loss of the oil. It is well known that it is more difficult to contain oil than water (see The Turret Crown [C. C. A.] 297 F. 766, 775), and that water ballast tanks cannot be used for carriage of oil unless in very good condition, and that oil is a solvent of white lead and rust, and that a hydrostatic test does not establish fitness for the carriage of oil (The Arakan [D. C.] 11 F.[2d] 791, 1926 A. M. C. 191).

A tank made water-tight by the use of white lead is not seaworthy for the carriage of linseed oil, and the use of white lead in a tank for such oil is not the use of due diligence in making a vessel seaworthy. The bill of lading which covered the shipment, and which was made a part of the contract of shipment by reference, expressly provides that the shipment is subject to the Hague Rules of 1921, which, like the Harter Act (46 USCA §§ 190–195), provides that the carrier shall be bound, before and at the beginning of the voyage, to exercise due diligence to make the ship seaworthy, and to make all parts of the ship in which goods are carried fit and safe for their reception, carriage, and preservation, and to provide for the proper and careful stowage, carriage, care, and handling of the goods carried, and that any agreement in a contract of carriage relieving the carrier or ship from liability or loss or damage to goods, arising from neglect or failure in the obligation provided in this article, or lessening such liability, shall be null and void and of no effect.

The respondent's negligence in using white lead in the preparation of the tank for the carriage of oil, and the stowage of oil in a tank made water-tight by the use of white lead, constituted negligence and lack of care in making the ship seaworthy for the purpose of carrying oil and negligence in stowing the oil.

That the respondent employed an engineering company to repair the tanks, and that a surveyor, acting for the shippers, approved the condition of the tank did not affect the owner's duty to exercise due diligence to make the ship seaworthy and in stowing the oil (see The Abbazia [D. C.] 127 F. 495; Bethlehem Shipbuilding Corporation v. Gutradt [The Ecuador] 10 F.(2d) 769, 1926 A. M. C. 342 [C. C. A.]; Compagnie Maritime Francaise v. Meyer [C. C. A.] 248 F. 881), nor did the provision of the contract that leakage shall be at owner's risk absolve the owner from liability for his negligence in stowing the cargo (Korea Maru [C. C. A.] 274 F. 509).

Nor is this suit barred because it was not brought within one year of the delivery of the shipment. The Hague Rules, art. III, § 6, provide that in any event the carrier and ship shall be discharged from all liability in respect of loss or damage, unless suit is brought within 12 months after the delivery of the goods.

Respondent failed to plead the limitation of time to sue and filed its answer on the merits and permitted libelant to prepare for trial and to try the suit without raising the defense. This omission to raise such a defense till after the suit was tried was a waiver of it. Green Star S. S. Co. v. Nanyang Bros. Tobacco Co. (C. C. A.) 3 F.(2d) 369, 1925 A. M. C. 221. Moreover, there never has been a delivery of the oil, the value of which it is sought to recover. See San Guglielmo (C. C. A.) 249 F. 588; Lehn & Fink v. American-Hawaiian S. S. Co. (D. C.) 1924 A. M. C. 1054. Compare Armour & Co. Ak-

tieselskab v. Gjeruldsen (C. C. A.) 15 F. (2d) 553.

The provision was made for the benefit of the shipowner and may be waived by him, and differs from provisions requiring the giving of notice of claim within a certain time as a condition precedent to any liability. See Cudahy Packing Co. v. Munson S. S. Line (The Lake Orange) 22 F.(2d) 898, 1928 A. M. C. 186 (C. C. A.); The Sagadahoc (D. C.) 291 F. 920; Brennan Packing Co. v. Cosmopolitan Shipping Co. (The Englewood) 14 F. (2d) 971, 1925 A. M. C. 1385 (D. C.); Armour & Co. Aktieselskab v. Gjeruldsen (C. C. A.) 15 F.(2d) 553.

The libelant, therefore, is entitled to a decree for damages sustained through the negligent failure of the defendant to make the ship seaworthy for the carriage of the oil and the negligent stowage thereof.